UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
WALLESCA PENZ,

       Plaintiff,

vs.                                                                                   <u>VERIFIED COMPLAINT</u>

AL WASHER,

       Defendant.
-----------------------------------------------------------------x

       By and for her complaint, Plaintiff Wallesca Penz alleges as follows:

## I.    <u>PARTIES</u>

1.    Plaintiff Wallesca Penz is a United States citizen of legal age and a resident of the City of Newburgh, New York, within this judicial district

2.    Defendant Al Washer is a resident of the County of Dutchess, within this judicial district, of legal age and a United States citizen. At all times relevant hereto, Defendant acted under color of state law and as a state actor.

## II.    <u>JURISDICTION</u>

3.    As Defendant engaged in conduct which violates the equal protection clause of the Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983, this Honorable Court has jurisdiction pursuant to 28 U.S.C. Secs. 1331, 1343 and 42 U.S.C. Sections 1983 and 1988.

### III. FACTUAL ALLEGATIONS

4. In 2006, Plaintiff commenced working as a corrections officer in and for the New York State Department of Correctional Services, since renamed DOCSS.

5. Since January, 2013, while plaintiff was at the workplace as an officer and in carrying out duties assigned to her as an officer, defendant made sexually suggestive and offensive comments to her and conducted himself in a sexually offensive way towards her and other subordinate female officers.

6. The Plaintiff was working at the facility and living in state-provided housing before the defendant was re-assigned to Fishkill Correctional Facility [hereinafter "Fishkill"].

7. Upon his assignment to Fishkill as a lieutenant, the Defendant lived across the hallway from plaintiff.

8. Defendant entertained in his room every weekend, hosting loud parties and serving alcohol.

9. Defendant frequently invited plaintiff to participate in his parties, but she declined.

10. When plaintiff asked how defendant was allowed to have a bar in his room when liquor was not allowed in their rooms, his answer to her was, "Don't forget who I am."

11. Plaintiff complained to Fishkill superintendent, Connelly, who assured her that he would speak to defendant and she need not worry.

12. Defendant stated to plaintiff that Connelly told him, "Don't worry about her, keep doing you."

13. Plaintiff found the Defendant's behavior offensive as it interfered with her sleep.

14. On February 14, 2014 after working two (2) tours, plaintiff asked defendant for her third tour off. Defendant was the watch commander for days off because officers are not allowed to

work more the two (2) tours at a time.

15. Defendant told plaintiff that he could make her stay. Defendant said, "You can leave only if you're going to stay in my room and I will meet you there." Plaintiff rebuked his comments, and defendant responded, "If you don't trust me, you will regret it." Defendant signed a slip and entered in the computer that she had a vacation day and could go to her room to rest.

16. Subsequent to defendant's sexually suggestive comments to plaintiff, plaintiff filed a written complaint with the superintendent concerning defendant's conduct.

17. Upon filing her complaint, plaintiff left work following a double shift, as she had vacation time approved by the Defendant for what originally was scheduled as a third consecutive shift.

18. After the second shift, Plaintiff sought to depart from the facility, as she understood that defendant had approved her vacation time.

19. However, rather than allow plaintiff to leave, defendant sought to exact sexual favors from her, indicating she could return to his room with him, relax, watch a movie, sit with him, and lay on his bed with him.

20. Plaintiff refused and indicated that she wanted to return to her own room.

21. On February 28, 2014, defendant called plaintiff in his office with the then Deputy of Security James Bell to tell plaintiff she was being charged with forging his signature on the form providing her third shift off, after she completed her second shift.

22. Plaintiff rebutted that she could not have forged defendant's signature, which was supported by the fact that such time request was entered into the computer and she did not have the codes to make such entry.

23. Following this event, defendant initiated a notice of discipline against plaintiff.

24. On May 22, 2015, plaintiff returned to her room earlier than had been expected by the defendant. Upon her return, defendant was in her room painting it pink without her permission.

25. Plaintiff was shocked to find defendant in her room and told defendant he should not be in her room.

26. Plaintiff asked defendant how he was able to get into her room and he said, "You need to figure out who I am quick. I went and got the master key."

27. Plaintiff told defendant to get out, and he responded. "Don't be ungrateful, I know you love pink."

28. On June 20th or 27th, 2015, defendant knocked on plaintiff's door and asked, "You not coming over? You don't have to worry about me hitting on you. My black girlfriend is there. Come have a drink with us." Plaintiff rejected his advance.

29. On October 1, 2016, DOCSS conducted a random search, and later on that day defendant was making rounds and asked the plaintiff, "Could I personally pat frisk you and strip search you?" When the Plaintiff rejected his advance, the Defendant told her she will "regret that."

30. On October 2, 2016, Defendant was making rounds and said to plaintiff, "You know you should have been the one getting searched, you escaped that one, not sure where the mix up was but I will get you." When Plaintiff walked away and rejected his advance, defendant smiled and responded, "I will win."

31. On December 26, 2017, defendant summoned plaintiff from her post at the arsenal.

32. Officers are not generally removed from this post.

33. After telling Lieutenant Sawyer to leave the room, defendant spoke with plaintiff and acknowledged that he had persistently harassed her, blocked her from training and days off, and indicated that he would stop.

34. However, the next month, Plaintiff sought "Train the Trainer" training in Albany.

35. Two other officers far junior to her in seniority applied for the same position.

36. After plaintiff complained, the selection of one of these officers, K. Lawrence, was revoked.

37. Selection for this training historically followed seniority.

38. At the meeting at which selections for this training were made, First Deputy Williams indicated that she was unaware that seniority was the principal criteria for selection.

39. Thereafter, the union representative so advised her and he and she agreed that the Plaintiff had the most seniority and should receive nomination by the facility.

40. Defendant attended this particular meeting, though this was unusual, and acted as a "heckler."

41. When the Plaintiff's name and seniority were recognized as qualifying her for the training, Defendant objected, noting she had a single serious disciplinary matter more than a decade earlier.

42. The union representative, Sonko, responded that in prior years, the facility had supported other candidates who had equally serious incidents which had occurred much more recently.

43. Sonko noted that these female subordinates had been close to the Defendant, but this was unavailing and plaintiff was not designated for the training.

44. On February 15, 2018, plaintiff was called into the facility to meet with representatives from the IG's office who had allegedly received a "snitch" note about her that she had a second job for which she lacked permission.

45. Upon plaintiff was cleared from this allegation, defendant told her, "Trust me, I am not done yet. Let me know if you are ready to say yes." Plaintiff shook her head and walked away.

46. On February 16, 2018, plaintiff received a direct order to return to the facility. Upon plaintiff's arrival at the facility, defendant made it his point to tell her, "If you have nowhere to stay tonight, you can stay with me because you will not be staying in that pretty pink room." Plaintiff did not understand such comment.

47. On February 17, 2018, plaintiff was locked out of her room and had to drive back to the Bronx after working two shifts. Plaintiff realized defendant had the lock in her state room changed.

48. On March 7, 2018, defendant grabbed the plaintiff's hand in a personal and unnecessary manner while she was working in the arsenal.

49. On April 13, 2018, plaintiff walked out of the office from turning in her grievances, and when the defendant saw her, he smiled and said, "The more grievances you turn in, the more it shows you want me."

50. On May 25, 2018, after plaintiff had finished her overtime shift and was notified that she would be working another shift immediately thereafter, plaintiff asked her area supervisor Sergeant to go to her car and get sanitary napkins and water to prepare for her next shift.

51. Plaintiff was allowed to go to her car before she started her second shift and after she made sure she was properly relieved.

52. While plaintiff was returning to the facility from her car to get her sanitary napkins, defendant was exiting the facility and touched her hand. Defendant stated to her, "I am going home. Want to come with me? Your husband will think you are at work." Plaintiff was shocked and disgusted, and walked away.

53. As plaintiff walked away, defendant said in a loud voice, "You will regret it once again."

54. Later that evening, Sergeant Nelson informed plaintiff that she was being relieved and needed to report to the Watch Commander's office.

55. At the Watch Commander's office, Lieutenant Larocque told her that she had to write a to-from because someone saw her leaving the facility and she needed to explain her conduct.

56. Plaintiff explained that she only left earlier to get sanitary napkins and she was given permission to do so and returned to her post.

57. On many occasions from 2014 through and including the present, as they entered work, defendant greeted female, but not male subordinates, with a kiss and a hug.

58. Plaintiff's union representative Sonko told plaintiff that this was the Defendant's modus operandi and that the wardens knew of his practice and tolerated it.

59. Plaintiff repelled the Defendant and found this conduct offensive.

60. Defendant's behavior toward women is legendary in the facility and he is known as a lady's man.

61. Defendant has dated both correctional officers and civilian employees and was always "with a woman."

62. Defendant consistently approved training and days off for female officers who did not have seniority and did not protest his sexual advances.

63. To no avail, plaintiff has filed numerous complaints with Diversity Management about the Defendant's inappropriate and unprofessional behavior.

64. Plaintiff's husband, Mr. Michael Penz, has been a correctional officer at Fishkill since April, 2012, having commenced service with DOCSS at Sing Sing in 2007.

65. Mr. Penz had no issues at the facility until he became closely associated with plaintiff who he married in December 2015.

66. Since their marriage, Mr. Penz has experienced greater micromanagement.

67. Within the last 30 days, Sergeant Sealey, a female, inappropriately touched Plaintiff's husband and indicated an intent to harass him.

68. Mr. Penz understood Sergeant Sealey as acting under the guidance and direction of the Defendant.

69. For Mr. Penz, the workplace has become intolerable.

70. Plaintiff does not wish to continue to work at the facility due to the Defendant's frequent and ongoing sexual harassment.

71. Plaintiff has been under the care of a psychiatrist and feels considerable stress reporting to her current work site due to the Defendant's sexually charged comments and behaviors towards her.

## IV. AS AND FOR A CAUSE OF ACTION

72. Plaintiff incorporates paragraphs 1-71 as fully incorporated herein.

73. By engaging in the aforestated sexual harassment on the basis of Plaintiff's gender, defendant violated plaintiff's right to equal protection of the law as guaranteed by the Fourteenth Amendment and made actionable by 42 U.S.C. Section 1983.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court accept jurisdiction over this matter, empanel a jury to hear the matter and decide this matter, award to Plaintiff compensatory and punitive damages against the individual Defendant for the abhorrent and wanton conduct in which he has engaged, award to Plaintiff reasonable attorney's fees and incurred costs arising

from prosecution of this matter and enter any other order, the interests of justice and equity require.

Respectfully submitted,

HALLIE GAINES

SUSSMAN & ASSOCIATES
1 Railroad Avenue, Suite 3
PO Box 1005
Goshen, NY 10924
845-294-3991
Counsel for Plaintiff Wallesca Penz

Dated: June 5, 2018

# **VERIFICATION**

STATE OF NEW YORK )
                                 ss:
COUNTY OF ORANGE )

I, WALLESCA PENZ, being duly sworn, depose and state that I am the plaintiff, one of the parties to the within action, that I have read the foregoing Complaint and know the contents thereof; that the same is true to my knowledge, except those matters stated to be alleged upon information and belief, and so to those matters I believe them to be true.

_____
WALLESCA PENZ

Signed and sworn to before me this
4th day of June, 2018

_____
NOTARY PUBLIC
GERYL L. PRESCOTT
Notary Public, State of New York
No. 01PR6014620
Qualified in Rockland County
Commission Expires Oct. 19, 20__